UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TRUCEPT, INC. fka SMART-TEK SOLUTIONS INC.,<br><br>Plaintiff,<br><br>v.<br><br>UNITED STATES INTERNAL REVENUE SERVICE,<br><br>Defendant. | Case No.: 15-cv-0447-BTM-JMA<br><br>**ORDER GRANTING IN PART AND DENYING WITHOUT PREJUDICE IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**<br><br>**[ECF NO. 25]** |

The United States Internal Revenue Service ("IRS") has filed a motion for summary judgment as to Plaintiff's claims under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, et seq. (ECF No. 25.) For the reasons discussed below, the IRS's motion will be granted in part and denied without prejudice in part.

## I. BACKGROUND

This is one of five actions filed by related entities against the IRS.[1] Each case is based on the claim that the IRS failed to comply with its obligations under 5 U.S.C. § 552 to respond to FOIA requests submitted by the plaintiffs. Plaintiffs contend they submitted their requests after the IRS filed a series of liens against them between 2011 and 2013 holding them liable for payroll tax liabilities of other

---

[1] The five actions (including this one) are: Trucept, Inc., fka Smart Tek Solutions Inc. v. United States Internal Revenue Service, Case No. 15-cv-0447-BTM-JMA; Smart-Tek Services, Inc. v. United States Internal Revenue Service, Case No. 15-cv-0449-BTM-JMA; Smart-Tek Service Solutions Corp. v. United States Internal Revenue Service, Case No. 15-cv-0452-BTM-JMA; Smart-Tek Automated Services, Inc. v. United States Internal Revenue Service, Case No. 15-cv-0453-BTM-JMA; and American Marine LLC v. United States Internal Revenue Service, Case No. 15-cv-0455-BTM-JMA.

1 corporations under alter ego and/or successor liability theories.

Plaintiff Trucept, Inc., fka Smart-Tek Solutions Inc. ("Plaintiff") alleges it sent a written FOIA request to the IRS on May 12, 2014. Compl. (ECF No. 1) ¶ 10. Under 5 U.S.C. § 552(a)(6)(A)(i), an agency has 20 business days following receipt of a FOIA request to determine whether to comply with the request and must "immediately" notify the requester of its determination. 5 U.S.C. § 552(a)(6)(A)(i). On June 26, 2014, the IRS allegedly sent a response to Plaintiff in which it acknowledged receipt of the request but "failed to make any determination about the request." Compl. ¶ 11. On February 27, 2015, having received no further response from the IRS, Plaintiff initiated this action.

On October 7, 2016, the IRS filed the instant motion. It indicates it has now completed its search for records and released 2,319 pages in full, and 617 pages in part, of non-exempt documents responsive to Plaintiff's FOIA request. Mot. Summ. J. at 1:9-15. It seeks summary judgment on the ground that it has fully discharged its obligations under 5 U.S.C. § 552. Plaintiff opposes the motion. (ECF No. 27.)

**II. DISCUSSION**

A. FOIA Summary Judgment Standard

Summary judgment is appropriate if the evidence, when viewed in the light most favorable to the non-moving party, demonstrates "there is no genuine dispute as to any material fact." Fed. R. Civ. P. 56(a); see Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). The moving party bears the initial burden of showing there is no material factual dispute and he or she is entitled to prevail as a matter of law. Celotex, 477 U.S. at 323. If the moving party meets its burden, the nonmoving party must go beyond the pleadings and identify specific facts which show a genuine issue for trial. Id. at 324.

District courts are directed to conduct a *de novo* review of the adequacy of an agency's response to a FOIA request. 5 U.S.C. § 552(a)(4)(B); U.S. Dep't of

Justice v. Reporters Comm. for Freedom of Press, 489 U.S. 749, 755 (1989). Because FOIA cases rarely involve material factual disputes, they "are typically and appropriately decided on motions for summary judgment." Defenders of Wildlife v. U.S. Border Patrol, 623 F. Supp. 2d 83, 97 (D.D.C. 2009); see Shannahan v. Internal Revenue Serv., 637 F. Supp. 2d 902, 912 (W.D. Wash. 2009). Courts "follow a two-step inquiry when presented with a motion for summary judgment in a FOIA case." Shannahan, 637 F. Supp. 2d at 912.

First, the district court must determine whether the agency has established that it fully discharged its obligation under FOIA to conduct an adequate search for responsive records. Zemansky v. U.S. Envtl. Prot. Agency, 767 F.2d 569, 571 (9th Cir. 1985). To meet this burden, the agency must:

> demonstrate that it has conducted a "search reasonably calculated to uncover all relevant documents." Further, the issue to be resolved is not whether there might exist any other documents possibly responsive to the request, but rather whether the search for those documents was adequate. The adequacy of the search, in turn, is judged by a standard of reasonableness and depends, not surprisingly, upon the facts of each case. In demonstrating the adequacy of the search, the agency may rely upon reasonably detailed, nonconclusory affidavits submitted in good faith.

Id. (quoting Weisberg v. U.S. Dep't of Justice ("Weisberg II"), 745 F.2d 1476, 1485 (D.C. Cir. 1984)).

If the agency satisfies its initial burden, the court proceeds to the second step and considers "'whether the agency has proven that the information that it did not disclose falls within one of nine FOIA exemptions.'" Shannahan, 637 F. Supp. 2d at 912 (quoting Los Angeles Times Commc'ns, LLC v. Dep't of the Army, 442 F. Supp. 2d 880, 894 (C.D. Cal. 2006)). Agencies seeking to withhold documents pursuant to a FOIA exemption "have been required to supply the opposing party and the court with a '*Vaughn* index,' identifying each document withheld, the statutory exemption claimed, and a particularized explanation of how disclosure of

the particular document would damage the interest protected by the claimed exemption." Wiener v. Fed. Bureau of Investigation, 943 F.2d 972, 977 (9th Cir. 1991); see Vaughn v. Rosen, 484 F.2d 820, 823-25 (D.C. Cir. 1973). "The purpose of a *Vaughn* index 'is … to afford the requester an opportunity to intelligently advocate release of the withheld documents and to afford the court the opportunity to intelligently judge the contest.'" Shannahan, 637 F. Supp. 2d at 912 (quoting Wiener, 943 F.2d at 979).

Finally, "even if the agency satisfies the two-part test, it generally must still disclose any reasonably segregable portions of the withheld documents." Id.; 5 U.S.C. § 552(b) ("Any reasonably segregable portion of a record shall be provided to any person requesting such record after deletion of the portions which are exempt under this subsection."). "'The burden is on the agency to establish that all reasonably segregable portions of a document have been segregated and disclosed.'" Id. (quoting Pac. Fisheries Inc. v. United States, 539 F.3d 1143, 1148 (9th Cir. 2008).

B. Reasonableness of Search

The IRS contends it has conducted an adequate search for records responsive to Plaintiff's FOIA request. To fulfill its obligations under FOIA, "the agency must show that it made a good faith effort to conduct a search for the requested records, using methods which can be reasonably expected to produce the information requested." Oglesby v. U.S. Dep't of the Army, 920 F.2d 57, 68 (D.C.Cir.1990). The agency must show "[w]hat records were searched, by whom, and through what process." Steinberg v. U.S. Dep't of Justice, 23 F.3d 548, 552 (D.C. Cir. 1994). An agency can meet its burden by submitting a "reasonably detailed, nonconclusory" affidavit "in good faith." Id. at 551 (quoting Weisberg II, 745 F.2d at 1485). Agency affidavits that "do not denote which files were searched or by whom, do not reflect any systematic approach to document location, and do not provide information specific enough to allow the plaintiff to challenge the

procedures utilized" are insufficient to fulfill the agency's burden. Weisberg v. U.S. Dep't of Justice, 627 F.2d 365, 371 (D.C. Cir. 1980). In determining whether an agency has met its burden to prove an adequate search, "the facts must be viewed in the light most favorable to the requestor." Zemansky, 767 F.2d at 571 (citing Weisberg II, 745 F.2d at 1485).

The IRS submits the declaration of Delphine Thomas as proof it conducted an adequate search for records responsive to Plaintiff's FOIA request. (ECF No. 25-5.) Thomas is a Senior Disclosure Specialist whose duties include responding to FOIA requests for IRS records, which requires her to "have knowledge of the types of documents created and maintained by the various divisions and functions of the Service and an understanding of the provisions of the FOIA." Thomas Decl. ¶ 1.

Thomas states that the disclosure specialists initially assigned to respond to Plaintiff's FOIA are now retired or in different positions and are thus "unavailable to declare." Id. ¶ 3. To familiarize herself with the search conducted prior to her involvement, she reviewed the previously-assigned disclosure specialists' case notes. Id.

She states the IRS received a written FOIA request from Plaintiff on June 20, 2014, seeking "'a complete copy of the administrative file' for Trucept, Inc., 'for tax forms 940, 941, 1120 and 1065 for years 2007-2014.'" Id. ¶ 4.[2] On June 26, 2014, "to search for files," disclosure specialist Irma Rentas used the IRS's Integrated Data Retrieval System ("IDRS"), an electronic system that "manages data that has been retrieved from the Master File System" which is "the Service's nation-wide electronic information system containing permanent taxpayer account information." Id. ¶¶ 6-8. Rentas located information regarding Plaintiff's "tax

---

[2] Although Thomas states a copy of the FOIA request is attached as Exhibit A to her declaration, it was not actually attached. See Thomas Decl. ¶ 4.

account information that fell within the scope of plaintiff's FOIA request" by following general practice for a records search, which is to enter the taxpayer identification number (TIN) into IDRS using certain command codes to retrieve information for the relevant tax years. Id. ¶¶ 9, 10.

From her IDRS search, Rentas "ascertained that Revenue Officer John Black (RO [Black]) was assigned to the collection matter of Smart-Tek Services." Id. ¶ 11. "[T]he Disclosure Office learned from RO Black that documents responsive to [Plaintiff's] requests would be located within the commingled files maintained by RO Black on these entities and over twenty (20) related entities." Id. ¶ 12. RO Black "began a collection proceeding for one of the Smart-Tek entities and, as he progressed, he realized all the entities were related." Id. He "had all the case files he identified transferred to him" and then "started working the case files as one large case file." Id. Thereafter, when he "received or created new documents, he added them to the commingled file in chronological order, not based on a particular entity" so that "the files for plaintiff and all of the other entities were all mixed together." Id. ¶ 13. According to RO Black, "his commingled file was stored in sixty-five (65) boxes," id., which the Disclosure Office later determined contained "around 141,000 pages." Id. ¶ 14.

Thomas indicates that another disclosure specialist, Ed Pullman, called Plaintiff's representative "to confirm [the] request was for the administrative file maintained by Collection personnel." Id. ¶ 15. Thomas, Pullman, and disclosure specialist Athena Amparano, later joined by "attorneys and law clerks in the Office of Chief Counsel," worked from August 2014 through fall 2015 to "search for responsive documents within the commingled administrative file." Id. ¶¶ 16-23. "Amidst the approximately 141,000 pages of documents my colleagues and I located 3,056 pages of documents responsive to Trucept's request." Id. ¶ 25. She concludes, "[t]o my knowledge, there are no other records responsive to Plaintiff's request." Id. ¶ 26.

Plaintiff argues Thomas's declaration is insufficient to demonstrate the adequacy of the IRS's search, because it fails to explain what documents the commingled files contained, the methodology used to review the 65 boxes of documents, criteria for selecting responsive documents, and because it does not identify the entities whose records were in the commingled file. Pl.'s Opp. at 6-7.

The Court agrees with Plaintiff in part. To sustain its burden, the IRS must show "[w]hat records were searched, by whom, and through what process." Steinberg, 23 F.3d at 552. Although a "reasonably detailed, nonconclusory" affidavit submitted "in good faith" will generally meet this burden, id. at 551 (quoting Weisberg II, 745 F.2d at 1485), in key respects, Thomas's declaration is too conclusory to suffice.

First, the declaration provides no indication how the IRS interpreted Plaintiff's FOIA request (as initially submitted in writing, or as subsequently clarified), nor does it provide an explanation of the scope or categories of documents it determined were responsive to the request. Thomas states, for example, that "all of plaintiff's tax account information that fell within the scope of plaintiff's FOIA request was discovered through IDRS," Thomas Decl. ¶ 10, but she never indicates what that "information" was. Federal agencies responding to FOIA requests are required to use search methods which can reasonably be expected to yield the information requested. Lane v. Dep't of Interior, 523 F.3d 1128, 1139 (9th Cir. 2008). Without knowing what records the IRS was searching for in response to Plaintiff's request, the Court has no context for evaluating the reasonableness of the IRS's search methods.

Second, Thomas's declaration fails to give sufficient information about the IRS's review of the 65 boxes of documents. The IRS spent months reviewing the boxes and removing particular documents, but it has not explained what criteria or search parameters the team used to determine which documents to remove for production. Although an agency need only prove its search was "reasonably

calculated to uncover all relevant documents," Zemansky, 767 F.2d at 571, to evaluate the adequacy of the IRS's search, the Court needs information regarding the document review to determine whether the IRS's search of the 65 boxes was reasonable. See County of Santa Cruz v. Ctrs. for Medicare and Medicaid Servs., No. C-07-2889 MMC, 2009 WL 816633, at *2 (N.D. Cal. Mar. 26, 2009) (holding IRS failed to demonstrate reasonableness of search where supporting declarations reported that searches of various files located no responsive documents, without explaining "the process used to conduct [the IRS's] search").

Next, the Court turns to Plaintiff's argument that the IRS cannot establish the reasonableness of its search without identifying the other entities whose records were in the 65-box commingled file. Opp. at 7. The IRS did not address this argument in its reply brief. See Reply (ECF No. 30) at 3-4.

Two countervailing principles seem to bear upon Plaintiff's contention. On the one hand, the Court must make a de novo determination of the adequacy IRS's response to Plaintiff's FOIA request, Reporters Comm. for Freedom of Press, 489 U.S. at 755, and it must be able to "intelligently judge the contest" to perform this role. Wiener, 943 F.2d at 977. On the other hand, withholding information relating to return information of another taxpayer or taxpayers, including the identity of third-party taxpayers, is authorized under 5 U.S.C. § 552(b)(3), in conjunction with 26 U.S.C. § 6103(a), and 5 U.S.C. § 552 (b)(7)(C). See Johnson v. Comm'r of Internal Revenue, 239 F. Supp. 2d 1125, 1128-29 (W.D. Wash. 2002).

Setting aside the merits of Plaintiff's argument, as a threshold issue, it seems likely that the alleged alter egos' identities have already been disclosed. "[O]nce tax return information is made a part of the public domain, the taxpayer may no longer claim a right of privacy in that information" and "'§ 6103's directive to keep return information confidential is moot.'" Lampert v. United States, 854 F.2d 335, 338 (9th Cir. 1988) (quoting Figur v. United States, 662 F. Supp. 515, 517 (N.D. Cal. 1987). Bonar is Plaintiff's president, and he indicates in a declaration

submitted in support of Plaintiff's opposition that Plaintiff issued its FOIA request after being served with an IRS lien based on "payroll tax liabilities of unrelated corporations." Decl. Brian Bonar ¶ 2. Presumably the alleged alter egos were identified in the IRS lien. Such a presumption seems supported by Bonar's declaration; he describes the entities as "unrelated corporations," and his characterization of the corporations as "unrelated" implies he knows who they are. Also, in researching the relevant legal issues, the Court encountered the district court's opinion in <u>Goldberg v. United States</u>, No. 13-61528-CIV, 2015 U.S. Dist. LEXIS 104815, at *3-4 n.2 (S.D. Fla. Aug. 5, 2015). The <u>Goldberg</u> litigation apparently arose from the same investigation of RO Black, and the district court's order appears to have disclosed the names of the entities involved. <u>See</u> <u>id.</u> If so, under <u>Lampert</u>, disclosing their names in this litigation would appear not to run afoul of § 6103(a).

The fact that any privilege pertaining to the identities of the alter egos may have been dispelled does not necessarily mean the identity of every entity whose files were in the 65 boxes has to be disclosed to establish the reasonableness of the IRS's search. At this stage, the record regarding the search the IRS undertook is not yet complete, and the Court will reserve ruling on the merits of Plaintiff's argument until the record is more fully developed.

Based on the foregoing, the Court finds the IRS has failed to carry its burden to demonstrate the adequacy of its search. Its motion for summary judgment will be denied without prejudice.

C. <u>Withholding of Responsive Documents Pursuant to FOIA Exemptions</u>

The IRS indicates it withheld all or part of responsive documents pursuant to FOIA exemptions.

1. <u>5 U.S.C. §§ 552(b)(3) ("Exemption 3"), (b)(6) ("Exemption 6"), (b)(7)(C) ("Exemption 7(C)")</u>

The IRS withheld responsive information pursuant to FOIA Exemptions 3, 6,

9

15-cv-0447-BTM-JMA

and 7(C).  Under Exemption 3, matters "specifically exempted by statute" are deemed exempted under FOIA "if that statute—(A)(i) requires that the matters be withheld from the public in such a manner as to leave no discretion on the issue; or (ii) establishes particular criteria for withholding or refers to particular types of matters to be withheld…." 5 U.S.C. § 552(b)(3)(A).  26 U.S.C. § 6103 is a provision within the IRS Code and has been determined to be an Exemption 3 statute.  Long v. United States, 742 F.2d 1173, 1178 (9th Cir. 1984).  Section 6103(a) provides that taxpayer "returns and return information shall be confidential."  26 U.S.C. § 6103(a).  "Return information" is defined to include, among other things, "a taxpayer's identity, the nature, source, or amount of his income, payments, receipts, deductions, exemptions, credits, assets, liabilities, … whether the taxpayer's return was, is being, or will be examined or subject to other investigation or processing, or any other data … with respect to a return….." 26 U.S.C. § 6103(b)(2).  Here, pursuant to Exemption 3, the IRS withheld documents because they contained information of "taxpayers other than the plaintiff."  Queener Decl. ¶¶ 14, 15.

Exemption 6 restricts from disclosure "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy."  5 U.S.C. § 552(b)(6).  Under Exemption 6, the IRS withheld all, or parts, of documents because they contain information relating to "taxpayers," tax preparers, and/or persons other than Plaintiff.  Queener Decl. ¶¶ 19, 20.

Exemption 7(C) requires withholding of records or information compiled for law enforcement purposes, but only to the extent the production of such information "could reasonably be expected to constitute an unwarranted invasion of personal privacy."  5 U.S.C. § 552(b)(7)(C).  Under Exemption 7(C), the IRS has withheld 17 pages of documents "concerning plaintiff in which personal identifying information for taxpayers other than plaintiff was withheld."  Queener Decl. ¶ 23(a).

At this stage, the Court will reserve ruling on the validity of the IRS's

1 withholding of information under Exemptions 3, 6, and 7(C). Plaintiff's essential
2 contention in this case is that the IRS wrongfully failed to produce documents
3 pertaining to alter ego entities whose tax liability was the basis for the lien against
4 Plaintiff. The information withheld on the basis of each of the foregoing exemptions
5 relates to unidentified "taxpayers" other than Plaintiff. Some of these taxpayers
6 may be the alter ego entities whose documents Plaintiff seeks. The IRS disputes
7 whether Plaintiff can obtain tax information relating to Plaintiff's alter egos without
8 an authorization from the alter ego. Plaintiff cannot obtain such an authorization,
9 however, without knowing which entities' records have been withheld. Although
10 the IRS claims even the names of the alter egos are protected from disclosure, if
11 those names have already been published such that any related privacy interest
12 has been lost, there would appear to be no impediment to identifying, in
13 subsequent briefing, any alter ego taxpayers whose records were withheld. If the
14 IRS can disclose those names in subsequent proffers, Plaintiff will have the
15 opportunity to more intelligently advocate for disclosure of the withheld information.
16 Wiener, 943 F.2d at 977.

17 The Court will therefore reserve determining whether the IRS has sufficiently
18 established the validity of its withholding of information under Exemptions 3, 6, and
19 7(C) until these issues have been more fully developed.

20     2. 5 U.S.C. § 552(b)(5) ("Exemption 5")

21 Exemption 5 protects from disclosure "inter-agency or intra-agency
22 memorandums or letters that would not be available by law to a party other than
23 an agency in litigation with the agency…." 5 U.S.C. § 552(b)(5). "This exemption
24 entitles an agency to withhold . . . documents which a private party could not
25 discover in litigation with the agency." Pac. Fisheries, 539 F.3d at 1148 (quoting
26 Maricopa Audubon Soc'y v. U.S. Forest Serv., 108 F.3d 1089, 1092 (9th Cir. 1997).
27 "Exemption 5 thus covers the attorney-client privilege, the attorney work-product
28 privilege, and the executive 'deliberative process' privilege." Maricopa, 108 F.3d

1 | at 1092.

Pursuant to Exemption 5, the IRS withheld parts of four pages of documents (pages 1919-20 and 1929-30) on the grounds the withheld information is protected by the attorney-client privilege. Queener Decl. ¶ 16. "The attorney-client privilege protects confidential disclosures made by a client to an attorney in order to obtain legal advice, ... as well as an attorney's advice in response to such disclosures." United States v. Ruehle, 583 F.3d 600, 607 (9th Cir. 2009) (internal quotation and citation omitted).

The IRS submits the declaration of Jacqueline Kay Queener, an attorney in the IRS's Office of Chief Counsel, in support of its decision to withhold responsive information under Exemption 5. Queener Decl. ¶¶ 16-18. She indicates the withheld information consisted of confidential written communications between RO Black and Mindy Meigs, an attorney in the IRS Office of Chief Counsel, in which Black sought, and Meigs provided, legal advice concerning Black's collection of Plaintiff's outstanding tax liabilities, and the alter ego or successor liability status of entities that might be pursued for collection. Id. ¶ 19(a). She also indicates she is familiar with FOIA's segregation requirements, and that the IRS complied with such requirements in withholding the referenced information. Id. ¶ 13.

The Court finds the information in the Queener declaration sufficiently detailed and non-conclusory to support the conclusion that the withheld information falls within the scope of the attorney-client privilege. Ruehle, 583 F.3d at 607. The Court also finds the IRS complied with its duty to produce reasonably segregable portions of documents containing such information.

Accordingly, the Court grants the IRS's motion for summary judgment as to its determination that the foregoing information was exempt from disclosure pursuant to Exemption 5.

//
//

### 3. 5 U.S.C. § 552(b)(7)(A) ("Exemption 7(A)")

Exemption 7(A) relates to "records or information compiled for law enforcement purposes" to the extent production of such information "could reasonably be expected to interfere with enforcement proceedings…." 5 U.S.C. § 552(b)(7)(A). To support withholding information or records under Exemption 7(A), an agency "must establish only that they were investigatory records compiled for law enforcement purposes and that production would interfere with pending enforcement proceedings." Barney v. Internal Revenue Service, 618 F.2d 1268, 1272-73 (8th Cir. 1980). For purposes of Exemption 7(A), the IRS is a law enforcement agency, Shannahan v. Internal Revenue Serv., 680 F. Supp. 2d 1270, 1281 (W.D. Wash. 2010), and civil tax enforcement proceedings are "enforcement proceedings," Barney, 618 F.2d at 1273. "The IRS need only make a general showing that disclosure of its investigatory records would interfere with its enforcement proceedings." Lewis v. Internal Revenue Serv., 823 F.2d 375, 380 (9th Cir. 1987). "[D]isclosure of such records as witness statements, documentary evidence, agent's work papers and internal agency memoranda, prior to the institution of civil or criminal tax enforcement proceedings, would necessarily interfere with such proceedings by prematurely revealing the government's case." Barney, 618 F.2d at 1273; see NLRB v. Robbins Tire & Rubber Co., 437 U.S. 214, 236-37 (1978).

The IRS withheld two pages of documents in full, and one page in part, under Exemption 7(A). Queener Decl. ¶ 21; Savala Decl. ¶ 8. The withheld information relates to an email from an attorney to an AUSA regarding possible abusive or criminal tax-related activity by one of his clients, and an email exchange between two IRS special agents and an AUSA regarding the attorney's tip. Savala Decl. ¶ 8(a), (b). Savala indicates the information relates to "ongoing collection of plaintiff's outstanding tax liabilities" and that release of the withheld information stands to forestall or interfere with the IRS's collection activities. Id.

The Court finds the information in the Queener and Savala affidavits sufficient to support the IRS's claim that the withheld information falls within Exemption 7(A), and that it complied with its duty to reasonably segregate and produce non-exempt information. See Queener Decl. ¶ 13. Accordingly, the IRS's motion for summary judgment will be granted on this ground.

### 4. 5 U.S.C. § 552(b)(7)(D) ("Exemption 7(D)")

Exemption 7(D) protects information compiled for law enforcement purposes from disclosure to the extent it

> could reasonably be expected to disclose the identity of a confidential source, including a State, local, or foreign agency or authority or any private institution which furnished information on a confidential basis, and, in the case of a record or information compiled by criminal law enforcement authority in the course of a criminal investigation or by an agency conducting a lawful national security intelligence investigation, information furnished by a confidential source[.]

5 U.S.C. § 552(b)(7)(D). Exemption 7(D) "has long been recognized as affording the most comprehensive protection of all of FOIA's law enforcement exemptions." Billington v. U.S. Dep't of Justice, 301 F. Supp. 2d 15, 22 (D.D.C. 2004). To invoke its protections, an agency must show the particular source "provided information under an express assurance of confidentiality or in circumstances from which such an assurance could be reasonably inferred." U.S. Dep't of Justice v. Landano, 508 U.S. 165, 172 (1993). "A source should be deemed confidential if the source furnished information with the understanding that the [agency] would not divulge the communication except to the extent [it] thought necessary for law enforcement purposes." Id. at 174.

The IRS withheld 38 pages in full, and two pages in part, under Exemption 7(D). Queener Decl. ¶ 24. The IRS relies on the declaration of Ms. Queener, who attests the documents were withheld or redacted because "they contain either the

//

14

15-cv-0447-BTM-JMA

identity, or sufficient information from which the identity could readily be discerned, of sources of information that furnished information" to the IRS "with the understanding that it would only be divulged to the extent necessary to facilitate ongoing efforts … to enforce the Federal tax laws as applied to plaintiff." Queener Decl. ¶¶ 24, 25.

The Court finds the IRS's evidence sufficient to show the withheld information is protected under Exemption 7(D). <u>Landano</u>, 508 U.S. at 174. The IRS has also sufficiently demonstrated it complied with its duty to reasonably segregate and produce non-exempt information. Accordingly, the Court will grant the IRS's motion for summary judgment as to the validity of its withholding of the foregoing information under Exemption 7(D).

### 5. <u>5 U.S.C. § 552(b)(7)(E) ("Exemption 7(E)")</u>

Exemption 7(E) protects information compiled for law enforcement purposes from disclosure to the extent it "would disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law." 5 U.S.C. § 552(b)(7)(E). To establish this exemption, "the Government must show that the technique that would be disclosed under the FOIA request is a technique unknown to the general public." <u>Pully v. Internal Revenue Serv.</u>, 939 F. Supp. 429, 438 (E.D. Va. 1996) (citing <u>Malloy v. Dep't of Justice</u>, 457 F. Supp. 543, 545 (D.D.C. 1978)).

The IRS withheld nine pages of documents in part pursuant to Exemption 7(E). Queener Decl. ¶ 26. Ms. Queener avers that the redacted information relates to Plaintiff's "Risk Score," "which reflects the Service's assessment of the priority of having the taxpayer's account assigned to a dedicated collection specialist to actively pursue collection of the taxpayer's outstanding liabilities." <u>Id.</u>

//

//

However, her declaration does not address whether the Risk Score is a "technique unknown to the general public." Pully, 939 F. Supp. at 438. Accordingly, the IRS's evidence is insufficient to support withholding under Exemption 7(E), and the Court will deny summary judgment without prejudice as to this exemption.

## III. CONCLUSION AND ORDER

For the reasons discussed above, the IRS's motion for summary judgment is GRANTED IN PART and DENIED WITHOUT PREJUDICE in part.

IT IS SO ORDERED.

Dated: July 5, 2017

Barry Ted Moskowitz, Chief Judge
United States District Court