# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TRUCEPT, INC. fka SMART-TEK SOLUTIONS INC., <br><br> Plaintiff, <br><br> v. <br><br> UNITED STATES INTERNAL REVENUE SERVICE, <br><br> Defendant. | Case No.: 15-cv-0447-BTM-JMA <br><br> **ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT** <br><br> **[ECF NOS. 38, 39]** |

The United States Internal Revenue Service ("IRS") and Plaintiff Trucept, Inc. fka Smart-Tek Solutions Inc. have filed cross-motions for summary judgment as to Plaintiff's claims under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, et seq. (ECF Nos. 38, 39). For the reasons discussed below, the IRS's motion will be granted and Plaintiff's motion will be denied.

I. **BACKGROUND**

This is one of five actions filed by related entities against the IRS.[1] Each case is based on the claim that the IRS failed to comply with its obligations under 5 U.S.C. § 552 to respond to FOIA requests submitted by the plaintiffs. Plaintiffs contend they submitted their requests after the IRS filed a series of liens against

---

[1] The five actions (including this one) are: *Trucept, Inc., fka Smart Tek Solutions Inc. v. United States Internal Revenue Service*, Case No. 15-cv-0447-BTM-JMA; *Smart-Tek Services, Inc. v. United States Internal Revenue Service*, Case No. 15-cv-0449-BTM-JMA; *Smart-Tek Service Solutions Corp. v. United States Internal Revenue Service*, Case No. 15-cv-0452-BTM-JMA; *Smart-Tek Automated Services, Inc. v. United States Internal Revenue Service*, Case No. 15-cv-0453-BTM-JMA; and *American Marine LLC v. United States Internal Revenue Service*, Case No. 15-cv-0455-BTM-JMA.

1  them between 2011 and 2013 holding them liable for payroll tax liabilities of other
2  corporations under alter ego and/or successor liability theories.

3　　　　Plaintiff Trucept, Inc., fka Smart-Tek Solutions Inc. alleges it sent a written
4  FOIA request to the IRS on May 12, 2014. Compl. (ECF No. 1) ¶ 10. Under 5
5  U.S.C. § 552(a)(6)(A)(i), an agency has 20 business days following receipt of a
6  FOIA request to determine whether to comply with the request and must
7  "immediately" notify the requester of its determination. 5 U.S.C. § 552(a)(6)(A)(i).
8  On June 26, 2014, the IRS allegedly sent a response to Plaintiff in which it
9  acknowledged receipt of the request but "failed to make any determination about
10 the request." Compl. ¶ 11. On February 27, 2015, having received no further
11 response from the IRS, Plaintiff initiated this action.

12　　　　On October 7, 2016, the IRS filed a motion for summary judgment, arguing
13 that it had fully discharged its obligations under 5 U.S.C. § 552 and indicating that
14 it had completed its search for records and released 2,319 pages in full and 617
15 pages in part, of non-exempt documents responsive to Plaintiff's FOIA request.
16 (ECF No. 25). On July 5, 2017, the Court granted in part and denied in part without
17 prejudice the IRS's motion for summary judgment. (ECF No. 32). The Court held
18 that the declarations submitted by the IRS were insufficient to demonstrate the
19 adequacy of the IRS's search because they (1) failed to explain how the IRS
20 interpreted Plaintiff's FOIA request and the scope of documents the IRS
21 determined were responsive to the request and (2) failed to provide sufficient
22 information about the process by which the IRS reviewed 65 boxes of documents.
23 *Id.* at 7.

24　　　　The IRS also indicated that it withheld, in full or in part, responsive
25 documents pursuant to the following FOIA exemptions: Exemption 3 (in
26 conjunction with 26 U.S.C. § 6103(a)), Exemption 5, Exemption 6, Exemption
27 7(A), Exemption 7(C), Exemption 7(D), and Exemption 7(E). The Court granted
28 the IRS's motion for summary judgment as to the documents withheld under

Exemption 5, Exemption 7(A), and Exemption 7(D). *Id.* at 12, 14, 15.

The IRS has now filed a renewed motion for summary judgment as to the remaining issues. (ECF No. 39). Plaintiff has also filed a motion for summary judgment. (ECF No. 38).

## II. DISCUSSION

### A. FOIA Summary Judgment Standard

Summary judgment is appropriate if the evidence, when viewed in the light most favorable to the non-moving party, demonstrates "there is no genuine dispute as to any material fact." Fed. R. Civ. P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The moving party bears the initial burden of showing there is no material factual dispute and he or she is entitled to prevail as a matter of law. *Celotex*, 477 U.S. at 323. If the moving party meets its burden, the nonmoving party must go beyond the pleadings and identify specific facts which show a genuine issue for trial. *Id.* at 324.

District courts are directed to conduct a *de novo* review of the adequacy of an agency's response to a FOIA request. 5 U.S.C. § 552(a)(4)(B); *U.S. Dep't of Justice v. Reporters Comm. for Freedom of Press*, 489 U.S. 749, 755 (1989). Because FOIA cases rarely involve material factual disputes, they "are typically and appropriately decided on motions for summary judgment." *Defenders of Wildlife v. U.S. Border Patrol*, 623 F. Supp. 2d 83, 97 (D.D.C. 2009); *see Shannahan v. Internal Revenue Serv.*, 637 F. Supp. 2d 902, 912 (W.D. Wash. 2009). Courts "follow a two-step inquiry when presented with a motion for summary judgment in a FOIA case." *Shannahan*, 637 F. Supp. 2d at 912.

First, the district court must determine whether the agency has established that it fully discharged its obligation under FOIA to conduct an adequate search for responsive records. *Zemansky v. U.S. Envtl. Prot. Agency*, 767 F.2d 569, 571 (9th Cir. 1985). To meet this burden, the agency must:

> demonstrate that it has conducted a "search reasonably calculated to

3

15-cv-0447-BTM-JMA

> uncover all relevant documents." Further, the issue to be resolved is not whether there might exist any other documents possibly responsive to the request, but rather whether the search for those documents was adequate. The adequacy of the search, in turn, is judged by a standard of reasonableness and depends, not surprisingly, upon the facts of each case. In demonstrating the adequacy of the search, the agency may rely upon reasonably detailed, nonconclusory affidavits submitted in good faith.

*Id.* (quoting *Weisberg v. U.S. Dep't of Justice ("Weisberg II")*, 745 F.2d 1476, 1485 (D.C. Cir. 1984)).

If the agency satisfies its initial burden, the court proceeds to the second step and considers "whether the agency has proven that the information that it did not disclose falls within one of nine FOIA exemptions." *Shannahan*, 637 F. Supp. 2d at 912 (quoting *Los Angeles Times Commc'ns, LLC v. Dep't of the Army*, 442 F. Supp. 2d 880, 894 (C.D. Cal. 2006)). Agencies seeking to withhold documents pursuant to a FOIA exemption "have been required to supply the opposing party and the court with a '*Vaughn* index,' identifying each document withheld, the statutory exemption claimed, and a particularized explanation of how disclosure of the particular document would damage the interest protected by the claimed exemption." *Wiener v. Fed. Bureau of Investigation*, 943 F.2d 972, 977 (9th Cir. 1991); *see Vaughn v. Rosen*, 484 F.2d 820, 823-25 (D.C. Cir. 1973). "The purpose of a *Vaughn* index 'is . . . to afford the requester an opportunity to intelligently advocate release of the withheld documents and to afford the court the opportunity to intelligently judge the contest.'" *Shannahan*, 637 F. Supp. 2d at 912 (quoting *Wiener*, 943 F.2d at 979).

Finally, "even if the agency satisfies the two-part test, it generally must still disclose any reasonably segregable portions of the withheld documents." *Id.*; 5 U.S.C. § 552(b) ("Any reasonably segregable portion of a record shall be provided to any person requesting such record after deletion of the portions which are exempt under this subsection."). "The burden is on the agency to establish that all

4

15-cv-0447-BTM-JMA

reasonably segregable portions of a document have been segregated and disclosed." *Id.* (quoting *Pac. Fisheries Inc. v. United States*, 539 F.3d 1143, 1148 (9th Cir. 2008)).

## B. Reasonableness of Search

The IRS contends it has conducted an adequate search for records responsive to Plaintiff's FOIA request. To fulfill its obligations under FOIA, "the agency must show that it made a good faith effort to conduct a search for the requested records, using methods which can be reasonably expected to produce the information requested." *Oglesby v. U.S. Dep't of the Army*, 920 F.2d 57, 68 (D.C. Cir. 1990). The agency must show "[w]hat records were searched, by whom, and through what process." *Steinberg v. U.S. Dep't of Justice*, 23 F.3d 548, 552 (D.C. Cir. 1994). An agency can meet its burden by submitting a "reasonably detailed, nonconclusory" affidavit "in good faith." *Id.* at 551 (quoting *Weisberg II*, 745 F.2d at 1485). Agency affidavits that "do not denote which files were searched or by whom, do not reflect any systematic approach to document location, and do not provide information specific enough to allow the plaintiff to challenge the procedures utilized" are insufficient to fulfill the agency's burden. *Weisberg v. U.S. Dep't of Justice*, 627 F.2d 365, 371 (D.C. Cir. 1980). In determining whether an agency has met its burden to prove an adequate search, "the facts must be viewed in the light most favorable to the requestor." *Zemansky*, 767 F.2d at 571 (citing *Weisberg II*, 745 F.2d at 1485).

In support of its contention that it conducted an adequate search for records responsive to Plaintiff's FOIA request, the IRS submits the declarations of Delphine Thomas and Jacqueline Queener. (ECF No. 39-1). Thomas is a Disclosure Specialist whose duties include responding to FOIA requests for IRS records, which requires her to "have knowledge of the types of documents created and maintained by the various divisions and functions of the [IRS] and an understanding of the provisions of FOIA." Thomas Decl. ¶ 1. Queener is an

attorney in the Office of the Chief Counsel of the IRS who was assigned to Plaintiff's case and "personally reviewed and [is] familiar with all documents at issue in this lawsuit." Queener Decl. ¶¶ 1, 3.

On June 20, 2014, the IRS received a FOIA request from Plaintiff seeking "a complete copy of the administrative file" for Plaintiff "for tax forms 940, 941, 1120, and 1065 for years 2007-2014." Thomas Decl. ¶ 4. Disclosure Specialist Irma Rentas was initially assigned to Plaintiff's request. *Id.* ¶ 6. "[C]onsistent with Disclosure Office procedures," Rentas entered Plaintiff's Taxpayer Identification Number ("TIN") into the Integrated Data Retrieval Service ("IDRS"). *Id.* ¶¶ 7, 9. IDRS is an electronic system that "manages data that has been retrieved from the Master File System enabling [IRS] employees to take specific actions on taxpayer account issues, track status, and post transaction updates back to the Master File." *Id.* ¶ 7. The Master File System is the IRS's "nation-wide electronic information system containing permanent taxpayer account information." *Id.* ¶ 8. Rentas entered the following codes into IDRS in conjunction with Plaintiff's TIN: BMFOLT (to retrieve all amounts, dates, and posted transactions pertaining to tax years 2007-2014), AMDISA (to retrieve a summary of all tax years and audits), and AMDIS (to determine the examination status of Plaintiff's tax years). *Id.* ¶ 9.

From the IDRS record, Rentas learned that Plaintiff's collection case file was in the possession of IRS Revenue Officer John Black. *Id.* ¶ 11. The IRS construed Plaintiff's request for "administrative file" as a request for the "case file maintained by a Revenue Officer who is assigned to that taxpayer's collection case(s)." Thomas Supp. Decl. ¶ 5. Plaintiff "accepts the IRS's interpretation of its request." (ECF No. 41 at 2).

Black informed the IRS Disclosure Office that documents responsive to Plaintiff's requests were located within the commingled files maintained by Black on Plaintiff and over twenty related entities. Thomas Decl. ¶ 12. The commingled documents resulted in 65 boxes of documents, with the number of pages per box

ranging from a low of 600 pages to a high of around 4000 pages. *Id.* ¶¶ 13, 14. The total number of pages in the 65 boxes was around 141,000. *Id.* ¶ 14. The 65 boxes of records were then scanned into electronic format and reviewed by Disclosure Specialists Thomas, Athena Amparano, and Ed Pullman. Thomas Supp. Decl. ¶¶ 9, 10, 15. The Disclosure Specialists conducted their review by selecting a box of scanned records and "searched through each PDF file folder page by page, looking for specific documents containing the plaintiff's name or TIN." *Id.* ¶ 17.

Documents containing only the Plaintiff's taxpayer return information were marked as responsive to Plaintiff's FOIA request. *Id.* ¶ 18. Some boxes contained documents pertaining to Plaintiff as well as other taxpayers. Thomas Supp. Decl. ¶ 11. Plaintiff submitted a Form 2848 "authorizing its attorney in fact to receive all of, and only, the return information of plaintiff within [Black's] commingled administrative file." Queener Supp. Decl. ¶ 12. Plaintiff "ha[d] not provided the [IRS] with the authorization required by the FOIA Treasury regulations and derived by section 6103 of the Internal Revenue Code to permit the [IRS] to disclose third party taxpayer 'return' or 'return information' to plaintiff." *Id.* ¶ 8. Therefore, if a document contained Plaintiff's return information as well as the return information of one or more of the other FOIA requesting entities, it was marked as partially responsive to Plaintiff's FOIA request and partially responsive to each of the other FOIA requesting entities whose return information was included on the document. Thomas Supp. Decl. ¶ 19. If a document contained Plaintiff's return information but also the return information of other taxpayers who did not submit FOIA requests, it was marked as partially responsive to Plaintiff's request only. *Id.* ¶ 20. "Documents that did not contain any of plaintiff's return information were marked as nonresponsive to plaintiff's FOIA request." *Id.* ¶ 21. Copies of responsive documents were uploaded to the IRS's Automated Freedom of Information Act ("AFOIA") system. *Id.* ¶ 23.

7

15-cv-0447-BTM-JMA

Upon completion of the search, the IRS located 3,056 pages responsive to Plaintiff's FOIA request. Queener Decl. ¶ 12. "Of these, 2,319 pages were released in full, 617 pages were released in part, and 120 pages were withheld in full." *Id.*

The IRS has submitted "reasonably detailed, nonconclusory" affidavits that show "what records were searched, by whom, and through what process." *See Steinberg*, 23 F.3d at 552. The IRS's declarations indicate how the IRS interpreted Plaintiff's FOIA request and its criteria to determine which documents from the 65 boxes were responsive to Plaintiff's request. Plaintiff argues that the IRS's search was unreasonable because documents containing Plaintiff's taxpayer information were commingled with documents containing other taxpayers' information and the IRS "mark[ed] any document as non-responsive merely because it did not contain Plaintiff's taxpayer information." (ECF No. 41 at 3). The Court finds the IRS's approach of marking documents as non-responsive if they did not contain Plaintiff's taxpayer information to be reasonable because Plaintiff's FOIA request only requested its own, and not any other taxpayers' administrative file. The IRS has conducted an adequate search in response to Plaintiff's FOIA request. The IRS's motion for summary judgment is granted as to this issue.

C. <u>Withholding of Responsive Documents Pursuant to FOIA Exemptions</u>

The IRS indicates it withheld all or part of responsive documents pursuant to FOIA exemptions.

1. <u>Exemption 3 in Conjunction with 26 U.S.C. § 6103(a)</u>

Pursuant to Exemption 3 and § 6103(a), the IRS withheld 62 pages in full and 572 pages in part because the pages contained information that was "the return information of taxpayers other than plaintiff." Queener Decl. ¶ 14.

Plaintiff argues that because the IRS has determined for tax liability purposes that Plaintiff and other taxpayers are alter egos, and therefore one entity, the IRS cannot withhold documents on the basis that they belong to other taxpayers. (ECF

No. 41 at 6). Plaintiff further contends that § 6103 no longer bars its request for certain return information because the names of its alleged alter egos were publicly disclosed in tax liens and a footnote in *Goldberg v. United States*, a related case. *See* 2015 WL 4656361, at *1 n.2 (S.D. Fla. Aug. 5, 2015). (ECF No. 38-1 at 9).

The IRS argues its withholding is justified because the documents contain statutorily protected third-party return information, and Plaintiff has failed to obtain the requisite authorization for their disclosure. (ECF No. 39-1 at 11-12). The IRS asserts it did not itself disclose taxpayer identities in the *Goldberg* case, and to the extent a tax lien constitutes public disclosure, the withheld documents nevertheless constitute protected return information. (ECF No. 39-1 at 13-17). Finally, the IRS contends that a rule requiring disclosure upon assertion of alter ego liability contradicts how the IRS treats separate taxpayers and would lead to "absurd results." (ECF No. 42 at 7-8). The Court agrees with the IRS in part.

FOIA Exemption 3, 5 U.S.C. § 552(b)(3), protects from disclosure matters "specifically exempted by statute." Section 6103 of the Internal Revenue Code, 26 U.S.C. § 6103, is one such statute. *Long v. U.S.*, 742 F.2d 1173, 1178 (9th Cir. 1984). Section 6103 provides that returns and returns information "shall be confidential," subject to certain exceptions. 26 U.S.C. § 6103(a). "If § 6103 forbids the disclosure of material, it may not be produced in response to a request under the FOIA." *Church of Scientology of California v. I.R.S.*, 484 U.S. 9, 11 (1987). FOIA requesters are generally not entitled to information identifying another taxpayer. *See, e.g.*, *Willamette Industries, Inc. v. U.S.*, 689 F.2d 865, 867-69 (9th Cir. 1982) (treating another taxpayer's identifying information as exempt from FOIA request but requiring IRS to provide reasonable segregable portions of record); *DeSalvo v. I.R.S.*, 861 F.2d 1217 (10th Cir. 1988) ("Individuals are . . . not entitled to the tax returns or return information of others unless a specific exception within the statute applies."); *Linsteadt v. I.R.S.*, 729 F.2d 998, 1000 (5th Cir. 1984) (stating a FOIA requester "is not entitled to access

to the tax return or return information of other taxpayers") (citing *Fruehauf Corp. v. I.R.S.*, 566 F.2d 574, 578 (6th Cir. 1980)).

The IRS asserts that Plaintiff seeks return information that is protected and cannot be disclosed without third party authorization. (ECF No. 39-1 at 11-12). The Court agrees. Section 6103 specifically protects a taxpayer's identity as confidential "return information." *See* 26 U.S.C. § 6103(a) ("Returns and return information shall be confidential . . . ."); 26 U.S.C. § (b)(2)(A) (including "a taxpayer's identity" in the definition of "return information"). "Return information" also encompasses "whether the taxpayer's return was, is being, or will be examined or subject to other investigation." 26 U.S.C. § (b)(2)(A). IRS regulations require that requests for another taxpayer's return information, which includes their identity, be accompanied by "a properly executed power of attorney, Privacy Act consent, or tax information authorization, as appropriate." 26 C.F.R. § 601.702(c)(5)(iii)(C). Plaintiff failed to obtain such consent here, despite its receipt of a tax lien listing nineteen alleged alter egos. (*See* ECF 38-2, Bonar Decl. Exh. A).

Plaintiff's relies on *Lampert v. United States* to support its assertion that the taxpayers' identities are public information as a result of the tax lien and *Goldberg* footnote, and therefore not subject to § 6103(a)'s disclosure prohibitions. 854 F.2d 335 (9th Cir. 1988). Plaintiff's reliance is not entirely misplaced. In *Lampert*, taxpayers alleged that government press releases detailing tax evasion charges against the taxpayers constituted unauthorized disclosures of their return information under 26 U.S.C. § 6103. *Id.* at 336. The Ninth Circuit rejected the taxpayers' arguments, reasoning that that "once information is lawfully disclosed in court proceedings, '§ 6103(a)'s directive to keep return information confidential is moot.' " *Id.* at 338 (quoting *Figur v. United States*, 662 F.Supp. 515, 517 (N.D. Cal. 1987)). The Ninth Circuit held that "once return information is lawfully disclosed in a judicial forum, its subsequent disclosure by press release does not

violate [the statute]." *Id.*

The IRS contends that because another party — not the IRS — publicly disclosed taxpayers' identities during the related *Goldberg* litigation, and because the IRS actively asserted the privilege throughout discovery, the IRS did not waive § 6103 protections in a court proceeding. (ECF No. 15-17). But the Court need not reach this argument, as *Lampert* seems to at a minimum allow the IRS to confirm that the entities listed on the public federal tax lien are among those whose documents are included in the commingled file. *See* Bonar Decl. Exh. A. The identities of Plaintiff's alleged alter-egos have been "made a part of the public domain" through legal process and the creation of a public record. *Lampert*, 854 at 338. It therefore follows that the identities of taxpayers named in the public tax lien are no longer privileged under § 6103. *See id.* The IRS even concedes as much. (ECF No. 39-1 at 14). However, the Court agrees with the IRS that the documents containing the taxpayers' other return information remain protected. *See generally* 26 U.S.C. § 6103(b) (enumerating other protected return information). That the IRS named other taxpayers publicly in connection with Plaintiff does not entitle Plaintiff to those taxpayers' undisclosed, non-public documents through the FOIA.

Plaintiff's alter ego argument is also unavailing. The Internal Revenue Code treats taxpayers as separate entities for tax assessment purposes irrespective of whether they are designated alter egos for collection purposes. *See Portsmouth Ambulance, Inc. v. U.S.*, 756 F.3d 494, 501 (6th Cir. 2014) (reasoning "the mere application of an alter-ego appellation does not transform separate individuals or companies into a single entity"). Plaintiff cites to an unreported district court case, *George v. Internal Revenue Service*, 2007 WL 1450309 at *1 n.3 (N.D. Cal., May 14, 2007), as evidence that the IRS has previously treated a FOIA requester and its alter ego as a single entity for both tax liability and disclosure purposes. (ECF No. 38-1 at 12). But *George* is neither binding nor does it hold that there is in fact

an alter ego exception to § 6103. *See id.*

For the forgoing reasons, the IRS's motion for summary judgment is granted as to Exemption 3.

### 2. Exemption 6

Exemption 6 restricts from disclosure "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6). To determine whether information has been properly withheld under Exemption 6 requires a court to "balance the privacy interests or personal nature of the information sought against the public interest that would be served by disclosure." *Chamberlain v. Kurtz*, 589 F.2d 827, 841-42 (5th Cir. 1979); *see Horowitz v. Peace Corps*, 428 F.3d 271, 278 (D.C. Cir. 2005).

The IRS withheld 36 pages in full and 54 pages in part pursuant to Exemption 6. Queener Decl. ¶ 20. According to Queener, the information being withheld "to protect personally identifying information of plaintiff and of third parties" consists of the "social security numbers of plaintiff's employees, the bank account, credit card, or driver license numbers of any individual taxpayer, the home addresses, telephone numbers, or email addresses of third parties, or taxpayer identification numbers, Federal and state, of plaintiff or any other third party." Queener Supp. Decl. ¶ 16.

The Court finds the referenced information was properly withheld under Exemption 6, because it consists of personal information of individuals that falls within the ambit of information typically subject to privacy protection, and the privacy interests of the individuals involved outweigh any public interest that might be served by disclosure. *See Chamberlain*, 589 F.2d at 841-42; *Akin, Gump, Strauss, Hauer & Feld, L.L.P. v. U.S. Dep't of Justice*, 503 F. Supp. 2d 373, 382 (D.D.C. 2007) ("When the material in the government's control is a compilation of information about private citizens, rather than a record of government actions, there is little legitimate public interest that would outweigh the invasion of privacy

because the information reveals little or nothing about an agency's own conduct."). The Court also finds that the IRS complied with its duty to reasonably segregate and produce all non-exempt information. *See* Queener Decl. ¶ 13. Accordingly, the Court grants the IRS's motion for summary judgment as to its withholding of information pursuant to Exemption 6.

### 3. Exemption 7(C)

Exemption 7(C) requires withholding of records or information compiled for law enforcement purposes, but only to the extent the production of such information "could reasonably be expected to constitute an unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(7)(C). "It is well established that the IRS has the requisite law enforcement purpose to fall within the scope of FOIA Exemption 7(C)." *Heggestad v. U.S. Dep't of Justice*, 182 F. Supp. 2d 1, 13 (D.D.C. 2000). "[U]nless access to the names and addresses of private individuals appearing in files within the ambit of Exemption 7(C) is necessary in order to confirm or refute compelling evidence that the agency is engaged in illegal activity, such information is exempt from disclosure." *SafeCard Servs., Inc.*, 926 F.2d at 1206; *see also Martin v. Dep't of Justice*, 488 F.3d 446, 457 (D.C. Cir. 2007) ("third parties who may be mentioned in investigatory files . . . have an obvious and substantial privacy interest in their information") (internal quotations omitted); *Blackwell v. F.B.I.*, 646 F.3d 37, 41 (D.C. Cir. 2011) ("privacy interests are particularly difficult to overcome when law enforcement information regarding third parties is implicated"); *Marcusse*, 959 F. Supp. 2d at 128 ("as a general matter, the identification of an individual in a law enforcement file will engender comment and speculation and carries a stigmatizing connotation . . . . Therefore, absent exceptional circumstances, the balance of interests categorically favors withholding the names of third parties, as such information is not probative of an agency's performance of its statutory responsibilities.") (internal citations and quotations omitted).

Under Exemption 7(C), the IRS has withheld 17 pages of documents, including "emails and a memorandum of interview concerning plaintiff in which personal identifying information for taxpayers other than plaintiff was withheld." Queener Decl. ¶ 23. Plaintiff does not assert that the IRS engaged in illegal activity and characterizes the public interest as shedding light on how the IRS made its tax liability conclusions with respect to Plaintiff and other affected entities. *See* Decl. Bonar; ECF No. 41 at 8. Therefore, the Court finds the referenced information regarding third-parties was properly withheld under Exemption 7(C). *See Vento v. I.R.S.*, 714 F. Supp. 2d 137, 149 (D.D.C. 2010) ("The FOIA was fundamentally designed to inform the public about agency action and not to benefit private litigants."). The Court also finds that the IRS complied with its duty to reasonably segregate and produce all non-exempt information. *See* Queener Decl. ¶ 13. Accordingly, the Court grants the IRS's motion for summary judgment as to its withholding of information pursuant to Exemption 7(C).

4. Exemption 7(E)

Exemption 7(E) protects information compiled for law enforcement purposes from disclosure to the extent it "would disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law." 5 U.S.C. § 552(b)(7)(E). To establish this exemption, "the Government must show that the technique that would be disclosed under the FOIA request is a technique unknown to the general public." *Pully v. Internal Revenue Serv.*, 939 F. Supp. 429, 438 (E.D. Va. 1996) (citing *Malloy v. Dep't of Justice*, 457 F. Supp. 543, 545 (D.D.C. 1978)); *see Wilkinson v. Fed. Bureau of Investigation*, 633 F. Supp. 336, 349 (C.D. Cal. 1986) (to justify withholding under Exemption 7(E), "the government will have the burden of proving that these techniques are not generally known to the public").

The IRS indicates it withheld 5 pages in full and 4 pages in part pursuant to

Exemption 7(E). Queener Decl. ¶ 29. The IRS relies on the declaration of Queener, who states the redacted information relates to Plaintiff's "Risk Score," "which is a technique used by the [IRS] to prioritize case assignments given the [IRS's] resource constraints. The Risk Score is a technique utilized by the [IRS] to ensure the effective enforcement of the nation's tax law, and is a technique unknown to the general public." Queener Supp. Decl. ¶ 18.

The Court finds the IRS's evidence sufficient to show that disclosure of the referenced information would disclose techniques and procedures for law enforcement investigations that could reasonably be expected to risk circumvention of the law. The Court also finds that the IRS complied with its duty to reasonably segregate and produce all non-exempt information. *See* Queener Decl. ¶ 13. Accordingly, the IRS's motion for summary judgment is granted as to its withholding of information under this exemption.

## III. CONCLUSION AND ORDER

The Court concludes with the reminder that "FOIA is not designed 'as a substitute for civil discovery.' " *Shannahan v. I.R.S.*, 672 F.3d 1142 (9th Cir. 2012) (quoting *Baldridge v. Shapiro*, 455 U.S. 345, 360 n.14 (1982)). As another district court reasoned, if the Court were to "hold [Plaintiff] was entitled to the third-party return information [it] seeks, [the Court] would have to disclose that same information to the general public too." *Greenberger v. I.R.S.*, 283 F.Supp.3d 1354, 1372 (N.D. Ga. 2017) (citing *Forest Serv. Emps. For Envtl Ethics v. U.S. Forest Serv.*, 524 F.3d 1021, 1025 (9th Cir. 2008) ("FOIA provides every member of the public with equal access to public documents and, as such, information released in response to one FOIA request must be released to the public at large.")).

//
//
//

For this reason and those discussed above, Plaintiff's motion for summary judgment is DENIED and the IRS's motion for summary judgment is GRANTED. (ECF Nos. 38, 39). The Clerk shall enter a final judgment accordingly.

IT IS SO ORDERED.

Dated: September 27, 2018

_____
Barry Ted Moskowitz, Chief Judge
United States District Court